Theft of property in the second degree; sentence: thirteen months' imprisonment.
This is a shoplifting case. Following substantially the language set out in Ala. Code § 13A-8-2 (1) (Supp. 1977) and Ala. Code § 13A-8-4 (e) (Supp. 1979), appellant was indicted and convicted of knowingly obtaining or exerting unauthorized control over a blouse and a pair of pants, the property of D.H. Holmes Company, Ltd., of the approximate aggregate value of $27.98, taken from or in the building where the property was stored or kept for sale, with the intent to deprive the owner of the same.
The crux of this appeal concerns the sufficiency of the State's evidence. Two witnesses testified for the State: Gail C. Cummings and Ted Arnett. At the end of their testimony, appellant moved to exclude the State's evidence based on its insufficiency. It is thus necessary to examine Ms. Cummings's and Mr. Arnett's testimony in detail in a light most favorable to the State.
Ms. Cummings testified that she was employed by D.H. Holmes Company, Ltd., as floor supervisor for security. Her duties included being "on the floor to detect shoplifters." Ms. Cummings stated that she was *Page 451 
working the junior department fitting room on June 21, 1980, the date of the alleged offense. One of her duties in this area was to inspect the dressing rooms, which were arranged in stalls, as customers "came in and out of the dressing rooms trying on clothes."
Ms. Cummings first saw appellant and a companion, Carol James, around 12:30 p.m. in the junior department at Holmes. The appellant and Ms. James walked into the fitting room; appellant went into one stall and Ms. James went into another. Ms. Cummings saw appellant carry four articles of clothing into her stall, "two black items and two pink items." Ms. James took one item into her stall. Appellant carried a D.H. Holmes shopping bag into her stall. Minutes earlier Ms. Cummings had checked the dressing rooms to "make sure" they were "clear of merchandise and hangers." Ms. Cummings stated that when appellant and Ms. James "went in . . . you could tell they were trying things on. . . . I heard the rattle of paper and I saw a sales slip fall on the floor. At that time I started watching more closely."
Appellant came out of her stall a few minutes later and joined Ms. James. Appellant was carrying the two black items, but Ms. Cummings did not see her carrying the pink items. Ms. Cummings testified that she "got up immediately and went down to the fitting room." She saw no merchandise in either of the two stalls, but saw a pants hanger and a shirt hanger in the stall next to appellant's that had not been there before. The ceiling to the dressing rooms was approximately twelve to fifteen feet high, but the tops of the stalls were low enough that "you could reach your hand over" from "one stall to the other."
Ms. Cummings walked back out into the junior department and saw appellant "standing over near the sales counter" with the black items of merchandise. The sales area was quite large. After making "eye contact" with appellant, appellant walked back into the dressing room, went into a stall and shut the door. Ms. Cummings paged Mr. Arnett, the store security manager, and followed appellant to her stall.
 "I went to the door, and I said, `I'm Gail Cummings with D.H. Holmes security. Would you please come with me? And she said something to the effect: I haven't left the store or — I haven't left the store. I said, `It doesn't matter. Would you please come with me? She shut the door, and I pushed it open, and I asked her to come with me. She shut the door again, and I pushed it open. . . .
. . . .
 ". . . At one point she shut the door and leaned against it like this, and there was a chair — This is the door. They're louvered. You can see in, but they can't see out. There was a chair right here. The bag was sitting on the chair, and she was going into it. About that time, I said: Ted, I need some help, or she's ditching it, I need some help."
Mr. Arnett convinced appellant to come out of the stall. Ms. Cummings then went into the stall next to appellant's and picked up a pink blouse and pair of pants that were lying on the floor. Ms. Cummings recorded the price tags of the two items in her interview log. The blouse was valued at $12.99 and the pants at $14.99.
On cross-examination Ms. Cummings admitted that it might be visually impossible to see every item if a customer had ten or eleven garments draped over her arm at one time, but that she "definitely could have observed" four garments if a person was carrying those garments in her hand. Ms. Cummings noted that appellant was carrying the black items in her hand when she came out of the dressing room, but she "did not see the pink garments." She said customers of Holmes were authorized to take clothes off the racks and carry them into the dressing rooms; customers also were not prohibited from taking merchandise out of the dressing rooms back into the shopping area, but the "concealing of garments would be unauthorized."
Ms. Cummings stated that she could not see the pink garments when appellant first came out of the dressing room. "They *Page 452 
weren't in view anymore." From the time Ms. Cummings left the dressing room area, following appellant into the large sales area, she did not know of anyone who could have gone into the dressing rooms. Ms. Cummings further stated that appellant did not leave the junior department in Holmes; appellant got to "the point of a cash register at one time," but did not pass it.
Mr. Ted Arnett testified that when he got to the junior department fitting room area he observed Ms. Cummings "struggling with somebody on the other side of the door, and just as I was approaching Gail," a pair of "hot pink" garments "came sailing through the air" from the stall appellant occupied into another stall.
On cross-examination Mr. Arnett reiterated that he saw the pink garments in the air from the time they left appellant's stall "until they hit the floor on the other side of the stall." Mr. Arnett stated that when he went into appellant's stall and identified himself, appellant told him "I know my rights." Mr. Arnett concluded that it was "completely okay with D.H. Holmes" for a customer to take garments "from the junior dress department into the junior dress dressing room" and take them back out or go back into the dressing room "as long as they're in our visibility."
Following this testimony the State rested its case. We find that the State's evidence was sufficient to submit to the jury and likewise was sufficient to sustain the jury's verdict.
Appellant's defense was that the pink items were not hidden, rather appellant had the garments "draped over" her arm when she came out of the dressing room heading toward the cash register. It was appellant's testimony that she at no time put any of the garments in her bag or attempted to conceal them in any way. Her purpose for going back to the dressing room was allegedly to "try on the dresses again" to see how they looked with a hat she had purchased earlier. This testimony, of course, presented a jury question. Jones v. State, 55 Ala. App. 274, 314 So.2d 876, cert. denied, 294 Ala. 761, 314 So.2d 879
(1975).
 I
To show the sufficiency of the State's evidence, it is helpful to set out those statutes which form the basis of appellant's indictment. Ala. Code § 13A-8-4 (e) (Supp. 1979), which describes the particular type of second degree theft of property appellant committed, reads as follows:
 "The theft of property which exceeds $25.00 in value, and which is taken from or in a building where said property is sold or stored, constitutes theft of property in the second degree."
The type of theft of property described in this section includes, but is not limited to, shoplifting from a department store. Applying the language of § 13A-8-4 (e) to the facts before us, it can be seen that the property in question exceeded $25 in value and was, in fact, taken by appellant in a building where the property was to be sold. Thus, the requirements under this section are met by the State's evidence.
In addition to the requirements of § 13A-8-4 (e), however, the conditions defining "theft of property" in Ala. Code §13A-8-2 (1) (Supp. 1977) must also be met. Following the pertinent language in Section 13A-8-2 (1) as that language was used in appellant's indictment, we read:
 "A person commits the crime of theft of property if he:
 (1) Knowingly obtains or exerts unauthorized control over the property of another, with the intent to deprive the owner of his property; . . ."
Again, we find that appellant's actions, when viewed in a light most favorable to the State, constituted "theft of property" as defined in the above section. The evidence supports a finding that appellant knowingly obtained the pink items of clothing with the intent to deprive the D.H. Holmes Company of them. Appellant's actions and responses, from the time Ms. Cummings made eye contact with her until she was arrested in the dressing room, evidence a strong consciousness of guilt. *Page 453 
A key word in § 13A-8-2 (1) is "obtains" which is a substitute word for the phrase "taking and carrying away"[1] as that phrase is used in the definition of larceny under Ala. Code § 13-3-50 (1975). See Livingston v. State, 44 Ala. App. 559,216 So.2d 731 (1968). Thus, the word "obtains" signifies asportation. And under prior cases, such as Jones, supra, andMartin v. State, 371 So.2d 460 (Ala.Cr.App. 1979), it is clear that if a shopper moves merchandise from one place to another within a store with the intention to steal it, there has been asportation and the shopper may be found guilty of larceny. Now, of course, the offense of larceny is covered under theft of property for offenses occurring on or after January 1, 1980. Therefore, when appellant "obtained" the pink garments, it was unnecessary for her to leave the store or even go past the check-out counter (Martin, supra) to be guilty of theft of property. Whether or not she intended to deprive Holmes of the items by concealing them was a question for the jury, which they resolved.
 II
Appellant next contends that § 13A-8-4 (e) violates the equal protection guarantees of federal and state law because it is discriminating in light of §§ 13A-8-4 (a) and 13A-8-5 (a). Sections 13A-8-4 (a) and 13A-8-4 (e) are both classified as Class C felonies while § 13A-8-5 (a) is classified as a Class A misdemeanor. Appellant argues that it is a denial of equal protection to punish a thief who commits theft of property valued over $25 as a felon under one set of circumstances (§13A-8-4 (e)) while requiring the property to be valued over $100 under another set of circumstances (§ 13A-8-4 (a)) in order to punish the thief as a felon. We disagree.
Sections 13A-8-4 (e) and 13A-8-4 (a) proscribe different conduct. Section 13A-8-4 (e), as used in this case, proscribes that conduct which is commonly known as shoplifting. It requires no recitation of authority for this court to recognize the seriousness of this widespread and costly problem. The legislature by enacting § 13A-8-4 (e) obviously intended to provide stiff penalties for those persons caught engaging in that conduct in our state.
On the other hand, § 13A-8-4 (a) proscribes that conduct which includes, but is not necessarily limited to, theft of property from a person's home or office. Should it seem illogical that the legislature would allow a thief to steal more from one's home or office than from a department store before classifying him as a felon, it must be remembered that even greater penalties are provided for the thief who commits theft of property "of any value from the person of another" and for the burglar who commits burglary in the first or second degrees. See Ala. Code §§ 13A-8-3, 13A-7-5 and 13A-7-6 (Supp. 1979).
The State certainly has a legitimate interest in punishing those individuals who engage in the conduct proscribed by §13A-8-4 (e). In applying the "rational basis test" as set out in Gideon v. Alabama State Ethics Commission, 379 So.2d 570
(Ala. 1980), we find that the classification described in §13A-8-4 (e) furthers a proper governmental purpose and is rationally related to the purpose for which it was created.
The presumption exists that statutes are constitutional. This court will not hold them unconstitutional unless convinced beyond a reasonable doubt of their unconstitutionality. AlabamaDairy Commission v. Food Giant, Inc., 357 So.2d 139 (Ala. 1978). The party challenging the constitutionality of a statute has the burden of establishing its invalidity. Jefferson CountyBoard of Health v. City of Bessemer, 293 Ala. 237,301 So.2d 551 (1974).
"The essence of the theory of equal protection of the laws is that all similarly situated be treated alike." City ofBirmingham v. Stacy Williams Co., Inc., 356 So.2d 608, 611
(Ala. 1978); State v. Spurlock, 393 So.2d 1052 (Ala.Cr.App. 1981). Equal protection of the laws does not compel uniformity in the face of difference. Hadnott *Page 454 v. City of Prattville, 309 F. Supp. 967 (N.D. Ala. 1970). The equal protection clause does not mean that a state may not draw lines that treat one class of individuals differently from others. The test is whether the difference in treatment is an invidious discrimination. Lehnhausen v. Lake Shore Auto PartsCo., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973).
 III
Appellant excepted at the conclusion of the oral charge to the trial court's failure to include the word "knowingly" in its definition of second degree theft of property. The record reveals clearly that the trial court corrected the charge as requested. Appellant made no further objection or exception. Thus, there is nothing for this court to review on this issue.
We have further reviewed appellant's requested charges which were refused by the trial court and find that they were either ungrammatical, abstract or incorrect statements of the law.Harris v. State, 358 So.2d 482 (Ala.Cr.App.), cert. denied,358 So.2d 487 (Ala. 1978); Hudson v. State, 335 So.2d 208
(Ala.Cr.App.), cert. denied, 335 So.2d 211 (Ala. 1976).
AFFIRMED.
All the Judges concur.
[1] See the commentary to §§ 13A-8-2 through 13A-8-5.