ON REHEARING
Our original opinion is withdrawn and this corrected opinion is to be substituted for that issued August 14, 1984.
Appellant Otho Belton Loper II, also known as Sonny Loper, was indicted for first degree theft and first degree theft by deception. Appellant's wife, Martha Loper, was indicted as well. The charge was that he obtained $27,600 from a retired Mobile couple on social security, Mr. and Mrs. Richard Fay, by promising to use the money to purchase "the O'Brien tract in Stewart County, Georgia" without the intention to perform or knowing that the act would not be performed.
Following a competency examination, his trial resulted in a conviction of theft by deception in the first degree and a sentence to eight years' imprisonment. On appeal he raises several grounds.
 I
He contends first that the state failed to make out a prima facie case. The appellant and his wife were across the street neighbors to their victims (Mrs. Loper also was indicted); the victims had allowed the appellant and his wife to use *Page 709 
their beach house; the victims had served as babysitters for appellant's children. Mrs. Fay testified "they were just like family and we really loved them and had every confidence in them; so why wouldn't I tell him."
The Fays, the victims, were preparing to invest in a piece of property in west Mobile County. They asked the appellant if he would look at that property and advise them as to whether it was a good investment. He, thereafter, advised them that that property was not a good investment. A few months later, appellant approached the Fays with an investment proposal. He stated that he had found approximately 900 acres of land in Georgia that could be bought. He said a down payment of $50,000 was required and he wanted them to put up half of it while he put up the other half. He told them that "IT T" was going to purchase the property within four months and they would make a profit of $50 an acre. Mrs. Fay wrote a check to the appellant on September 23, 1980, in the sum of $27,600, this comprising her $25,000 inheritance and $2,600 from her husband's savings accounts. Appellant Loper gave her a contract, stating that he had entered into an agreement to purchase 920 acres in Stewart County, Georgia, known as the O'Brien Tract. He signed this in the name of Chattahoochee Timberlands Corporation, with the words "its authorized agent" underneath his name. He also provided them with a promissory note as security for their giving him the $27,600. Mrs. Fay testified that they gave Loper the money to invest in the 920 acres of land in Georgia and for "nothing else."
Loper placed the money in his bank account and proceeded to spend it for various personal expenses. He gave his wife $3,000. He paid $3,500 on a personal loan. He made a payment at Friedman's Jewelers. He made payments to the Grady Buick Company and to Connell Automotive. He bought men's clothing at William Moore Clothiers. He paid his power bill, he paid three months' rent on his house, $3600. He paid his children's tuition at St. Paul's School. He also paid $900 to McCoy Outdoor Company for a three-barrel drilling rifle/shotgun combination.
It was the understanding of the victims that they would receive a return on their money by January 15, 1981. After that point in time, there ensued a series of delaying tactics on the part of the appellant. One excuse was that there were many heirs scattered all over the nation and it was taking time to get the deeds signed. The victims continued to ask about their money. They discovered in October of 1981, from one of the appellant's children, that the appellant was moving to Savannah, Georgia. The Fays met with the Lopers the night before the Lopers moved to Savannah and were assured at that time that they would begin receiving payments in January 1982, after the purchaser of the land began cutting timber; that the first payment, he said, would be $7,000 and each month thereafter there would be a payment and all the money would be split equally. He showed her some papers but kept them in his possession. Eventually he gave Mrs. Fay a $1400 check which the bank stated was "no good" when she first presented it for payment. After confrontation, appellant advised Mrs. Fay to deposit the check and he would cover it, which he did. The last time Mrs. Fay contacted appellant was on May 3, 1982. Appellant told her "he did not have the money and it was all he could do to keep from taking bankruptcy."
The state called to the stand a Mr. Futch, who stated that he was the Executive Vice President of Georgia Timberlands in Macon, Georgia; that his company had purchased an option to buy the 920 acres in question in 1980; that they exercised the option and bought the land in early 1981, held it for three weeks and sold it to the Travelers Insurance Company. He testified that he was never contacted by the appellant. He said he was approached at one time by a man named Lee Byrd claiming to represent Chattahoochee Timberlands Corporation but that no transaction ever took place between them. *Page 710 
The state then proved the disposition of the moneys obtained by the Lopers from the Fays. The state introduced the articles of incorporation of the Chattahoochee Timberlands Corporation filed in Georgia, showing that the corporation papers were not filed until four months after the appellant obtained the Fays' money. Appellant Loper testified that he in fact paid money for an option to buy the property and did in fact receive an option. No cancelled check, receipt, nor option was offered into evidence. He claimed to have had the permission of the president of Chattahoochee Timberlands Corporation to act on behalf of the corporation four months before its formation.
To make out a case for violation of the Code of Alabama 1975, § 13A-8-3 and § 13A-8-2, theft by deception in the first degree, the state was required to prove three things: 1) that the appellant knowingly obtained the property of Mr. and Mrs. Richard Fay; 2) that the appellant obtained the Fays' property by deception; and 3) that the appellant intended to deprive the Fays of their property. The evidence is uncontradicted that the payment was made. Section 13A-8-1 (1)(f), Code of Alabama 1975, states that deception occurs when a person knowingly:
 "(f) promises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform."
There existed in this case more than a mere failure to perform. The appellant claimed to be the agent of a corporation in Georgia which did not exist. He put the money in his personal bank account and used it for personal purposes. He never purchased nor attempted to purchase the property. The promissory note he gave the Fays was signed in the name of the non-existent corporation. He also signed it individually. He strung them along over a period of over a year and a half by telling them one tale after another and ended up refusing to accept their long distance telephone calls. The state's evidence indicated that all of the Fays' money had been spent by the appellant within two months according to the bank statements. We can only conclude that there never existed the slightest intention to perform on the part of the appellant.
The state must also prove that the accused had the intent to deprive the victims of their property. "Deprive" is defined in § 13A-8-1 (2)(b), Code of Alabama 1975:
"(2) To `DEPRIVE . . .' means:
. . .
 b. To dispose of the property so as to make it unlikely that the owner would recover it;"
The state's proof included evidence from Mrs. Gwyn Franklin, custodian of records of the First National Bank of Mobile, showing a deposit of the check by the appellant. At the time appellant deposited the $27,600 check, he only had $168 in the bank. The evidence also was that he had at the time written several checks before making this deposit which had not yet cleared the bank's records but would have resulted in an overdraft of over $1600. The money obtained from the Fays covered these checks already written.
The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury.McMurphy v. State, 455 So.2d 924 (Ala.Crim.App. 1984), Craig v.State, 410 So.2d 449 (Ala.Crim.App.), cert. denied,410 So.2d 449 (Ala. 1982). In McMurphy our court again laid out the rule that fraudulent intent need not be proven by direct substantive evidence but rather can be inferred from conduct of the defendant and the circumstances of the case. See Cottonreederv. State, 389 So.2d 1169, 1174 (Ala.Crim.App. 1980). A prima facie case was made.
 II
The appellant asserts that since the Fays got a civil judgment against him for the money this criminal prosecution for the crime by the state of Alabama is preempted. It is hornbook law in Alabama *Page 711 
that a judgment in a civil case is not conclusive as res judicata in a criminal case, or vice versa, there being no mutuality of parties and different degrees of proof, respectively, being required.
 III-A
Appellant contends that he should not have been sent to the Taylor Hardin Medical Facility for competency testing. The state's attorney, who was also the trial attorney in this case, contends that the appellant obtained several continuances by changing counsel immediately before trial, although the record only proves that he had several different attorneys. After the court informed the appellant that he would go to trial in May 1983, appellant checked into the Southland Hospital in Mobile just before his trial date, according to the presentence report. On May 17, 1983, the court decided to have the appellant examined for mental competency before trying him. This action on the part of the court was within the court's discretion. The facts here indicate it to have been a wise exercise of that discretion.
 III-B
Another argument made by appellant Loper is that he was without funds to hire a lawyer at this time and should have had counsel appointed. The record shows that the appellant was employed and had assets of over $30,000. The state produced evidence to contradict appellant's sworn affidavit that he was indigent. The court found that he was not indigent. After this decision, the appellant procured a lawyer. We find no error here.
 III-C
The appellant contends the judge should have recused himself because an employee of his, a secretary, had once been a secretary for a law firm which had once represented the victims in this case. In circuits with less population, it would be possible to demonstrate all sorts of collateral connections among the parties and witnesses in a lawsuit. The contention that the trial judge would be biased as a result of his secretary's previous employment, we find ridiculous. This court held in Marsh v. State, 418 So.2d 191 (Ala.Crim.App.), cert.denied, 418 So.2d 191 (Ala. 1982):
 "There is a presumption that a judge or one sitting in a judicial capacity is qualified and unbiased and one who alleges that a judge is unqualified or biased has a substantial burden to show ground therefor. Schillaci v. State, 347 So.2d 556 (Ala.Crim.App. 1977)."
The judge in this case considered the motion to recuse and denied it. His decision should not even be reviewed on appeal in the absence of clear evidence of bias. Slinker v. State,344 So.2d 1264, 1268 (Ala.Crim.App. 1977), citing Ex parte White,53 Ala. App. 377, 300 So.2d 420 (1974), cert. denied, 293 Ala. 778, 300 So.2d 439; Ex parte Thompson, 23 Ala. App. 46,121 So. 429 (1929). We find no evidence of bias.
 IV
Appellant next contends the court erred in not granting him a preliminary hearing. Section 15-11-1, Code of Alabama 1975, states as follows:
 "Every person charged with and arrested for a felony before his indictment shall have an absolute right to a preliminary hearing on said charge upon such person's demand within 30 days following said arrest; provided, that such person's failure or refusal to appear for such preliminary hearing or his absence from the State at the time of the setting for the preliminary hearing shall not delay or invalidate an indictment pursuant to said charge."
This issue has been decided adversely to appellant's contention. In Duncan v. State, 369 So.2d 885, 887
(Ala.Crim.App. 1979), the court stated:
 ". . . We hold that no reversible error results where an indictment has been returned against the accused. It would be folly on the part of this court to reverse a case in order to require a repetitious *Page 712 
inquiry into probable cause where such had already been determined by the grand jury. For this reason, we hold that any error committed by the trial court in not granting the appellant a preliminary hearing was harmless. Rule 45, Alabama Rules of Appellate Procedure."
 V
Appellant next contends that the court erred in denying appellant's motion to quash or dismiss the indictment after a hearing on March 25, 1983. He reasons that since the docketed indictment is a reindictment of two other docket-numbered indictments, there was no legal evidence presented to the grand jury at the time of the reindictment. The practice of reindicting defendants is common and their constitutional rights are not thereby infringed upon. The evidence presented for the original indictment of a defendant in respect to an incident may be considered that evidence on which the reindictment is based. This court stated in Wright v. State,421 So.2d 1324, 1327 (Ala.Crim.App. 1982), cert. denied, November 24, 1982 (No. 81-959), as follows:
 "The testimony of a single witness before the grand jury is sufficient to comply with Ala. Code § 12-16-200 (1975). Douglas v. State, 42 Ala. App. 314, 163 So.2d 477 (1963), cert. denied, 276 Ala. 703, 163 So.2d 496 (1964), rev'd on other grounds, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). When it appears that witnesses were examined by the grand jury, or the jury had before them legal documentary evidence, no inquiry into the sufficiency of the evidence is indulged. Fikes [v. State, 263 Ala. 89, 81 So.2d 303 (1955), reversed on other grounds, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957)]; Sparrenberger v. State, 53 Ala. 481 (1875); Evans v. State, 338 So.2d 1033 (Ala.Cr.App. 1976), cert. denied, 348 So.2d 784 (Ala. 1977)."
The burden of proof, furthermore, is on the party seeking to quash an indictment because of failure to present legal evidence. In Wright, supra, this court stated further:
 "In a motion to quash an indictment alleging failure by the State to present legal evidence to the grand jury, the burden of proof is on the defendant. Sparks v. State, 46 Ala. App. 357, 242 So.2d 403, cert. denied, 286 Ala. 738, 242 So.2d 408 (1970), cert. denied, 402 U.S. 909, 91 S.Ct. 1382, 28 L.Ed.2d 650 (1971); Hill v. State, 20 Ala. App. 197, 101 So. 298 (1924)."
The court did not err in this respect.
 VI
Appellant next contends the court erred in denying his motion for a mistrial. The secretary for the defense counsel in this case, one Patricia Nino, took the stand and testified that she observed Mrs. Fay conferring with Mr. Fay in the corridor of the courthouse. She testified, "I didn't just happen to find them. I was just walking by and they were there. I mean it is just a coincidence, I wasn't looking for them." The defense counsel's secretary testified that she understood Mrs. Fay to say "we understood that we were buying land." Mrs. Fay, recalled to the stand, testified that she said no such thing. She said that she told her husband, "I just said they think I am a real estate agent and I haven't bought and sold any property; that's all I said." The trial court then admonished Mrs. Fay not to discuss any of her testimony with her husband or anyone else and told her he would hold her in contempt if she violated his instructions.
Excluding witnesses from the courtroom is entirely discretionary with the trial court. Both Mr. and Mrs. Fay had a right to be in the courtroom at all times under the provisions of the Alabama Crime Victims' Court Attendance Act, Ala. Code (1975) § 15-14-50 through § 15-14-57. Since Mr. Fay could have heard his wife's testimony at first hand, no error could be predicated on her recounting to him what she said. No ground for mistrial is presented here. *Page 713 
 VII
Appellant contends that the trial court erred in denying his motion for a change of venue. This motion was supported by attaching one newspaper article and one newsletter mailed by the attorney general's office to public officials and law enforcement agencies. No other evidence was offered. Appellant was permitted to conduct a vior dire examination of the venire, and no contentions regarding change of venue were made at that time. In McLaren v. State, 353 So.2d 24, 31 (Ala.Crim.App. 1977), cert. denied, 353 So.2d 35 (Ala. 1977), this court stated:
 "Prejudicial pre-trial publicity may be a ground for a change of venue under T. 15, Section 267, Code of Alabama 1940, Recompiled 1958; Butler v. State, 55 Ala. App. 421, 316 So.2d 348. However, the defendant in a criminal case has the burden of showing there was such prejudice prevailing in the community where his trial was set that a fair and impartial trial could not be had. Boutwell v. State, 279 Ala. 176, 183 So.2d 774."
No bias was proved here.
The conviction and sentence of the appellant are due to be affirmed.
ORIGINAL OPINION WITHDRAWN;
OPINION SUBSTITUTED;
JUDGMENT AFFIRMED;
APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.