John G. Donovan was convicted of theft of property in the first degree and was sentenced to four years' imprisonment. That sentence was "split," with one year to be served in the penitentiary and three years on probation. He was ordered to pay court costs and $25 to the Victims Compensation Fund. Three issues are raised on this appeal from that conviction.
 I
The defendant contends that the State failed to present a prima facie case of first degree theft by deception. Donovan was charged with theft of property in the first degree in a two-count indictment. However, at the close of the State's evidence, the trial judge, pursuant to the defendant's motion, dismissed Count II of the indictment. The charge remaining in the indictment was that Donovan
 "did knowingly obtain by deception control over a wire transfer, a check and/or lawful currency and/or coinage of the United States of America, a better description of which is unknown to the Grand Jury, of the value of $9,739.32, the property of Jacquelyn Donovan, with intent to deprive the owner of the property, in violation of Section 13A-8-3 of the Code of Alabama, against the peace and dignity of the State of Alabama."
The State's evidence shows that in 1986 John Donovan and the victim, Jacquelyn Watts Donovan, became acquainted with each other. Their relationship began as a friendship and continued in this manner until the summer of 1987. At this time, the defendant, who was living in California, phoned Ms. Watts. During their telephone conversation, they discussed marriage and the possibility of "pooling" their money so that they could purchase a pub in either England or Ireland. Ms. Watts informed the defendant of the funds she had available for such an endeavor.
Donovan left California en route to Montgomery. In the middle of his trip, he phoned Ms. Watts and told her that in order for them to have access to their money while they were in Great Britain they needed to open an account at either the Keesler Air Force Base Credit Union in Biloxi, Mississippi, or at a branch in Washington, D.C. Ms. Watts agreed to meet the defendant in Houston, Texas, so that they could drive to Biloxi together.
On September 3, 1987, both Donovan and Ms. Watts went to the Keesler Air Force Base Credit Union to open the account. The defendant placed only his name on the account and made his daughter the beneficiary of the account's proceeds. He would not allow Ms. Watts to put her name on the account. When the bank employee who was handling the opening of the account offered the papers to Ms. Watts for her signature, the defendant pushed them away and told Ms. Watts that under military law her name could not appear on the account until they were married. This was not true.
After the account was opened, the two drove to Montgomery. Upon their arrival, Ms. Watts and the defendant went to her bank where she authorized a transfer of $9,739.32 to Donovan's account at Keesler Air Force Base. Ms. Watts testified that she transferred her money to the defendant's account based upon her belief that she and Donovan were going to marry, travel to Europe, establish a home, and *Page 1089 
purchase a pub. The transfer was credited to the defendant's account within twenty-four hours.
The following day, September 4, 1987, the couple was married in Wetumpka. Afterward, they celebrated at a local lounge. On her way home from the lounge, Ms. Watts, now Mrs. Donovan, was involved in an automobile accident. She was transported by ambulance to the emergency room of a Montgomery hospital. The defendant, who was still at the lounge, was contacted by the hospital, and he went to see his wife. Mrs. Donovan asked him not to "leave the emergency room because [she felt] like [she would] be out real soon. . . ." However, the defendant did not comply with his wife's request. Upon her release from the hospital that same night, Mrs. Donovan discovered that her husband had not waited for her to be discharged. After trying to locate her husband, Mrs. Donovan had a taxi take her home. When she arrived at her townhouse, most of the lights were on and the front door was unlocked. The defendant's luggage, which had been in the foyer, was gone. Mrs. Donovan telephoned a friend and asked for her help in locating Mr. Donovan. They searched the city but could not find the defendant. Mrs. Donovan later discovered that her husband had traveled to Great Britain without her.
Mrs. Donovan made numerous attempts to contact the defendant while he was in Europe. All were unsuccessful. During his stay overseas, the defendant withdrew $5,500 from his credit union account. Mrs. Donovan testified that she did not hear from the defendant until he returned to the United States in late December. The State introduced into evidence a post card the defendant had sent a friend wherein he wrote, "having a wonderful time and by myself."
Upon his return to the United States, the defendant phoned his wife and asked her to come to New Hampshire because he wanted to set things straight. Mrs. Donovan complied with his request, but the two were unable to resolve their differences. The defendant never again contacted his wife, nor did he make any effort to return her money.
We find that the prosecution presented sufficient evidence to establish a prima facie case of theft by deception.
 "To make out a case for violation of the Code of Alabama 1975, § 13A-8-3 and § 13A-8-2, theft by deception in the first degree, the state was required to prove three things: 1) that the appellant knowingly obtained the property of [Mrs. Donovan]; 2) that the appellant obtained [Mrs. Donovan's] property by deception; and 3) that the appellant intended to deprive [Mrs. Donovan] of [her] property. The evidence is uncontradicted that the [transfer of money] was made. Section 13A-8-1(1)(f), Code of Alabama 1975, states that deception occurs when a person knowingly:
 " '(f) promises performance which the defendant does not intend to perform or knows will not be performed. Failure to perform, standing alone, however, is not proof that the defendant did not intend to perform.' " Loper v. State, 469 So.2d 707, 710 (Ala.Cr.App. 1985).
In the instant case, there existed more than a mere failure to perform. The defendant had his future wife transfer her money to a bank account to which she did not have access and to which she never gained access. The money was deposited in the defendant's personal bank account, and he used it for his own personal gain. During his stay in Europe, the defendant never contacted his wife, nor did he ever undertake to have her join him overseas. He never purchased, nor attempted to purchase, a pub. According to the bank statement that was admitted into evidence at trial, approximately $4,500 of Mrs. Donovan's money had been spent by the defendant within one month of their marriage. Based on these circumstances, we can only conclude that the defendant did not intend to perform all of his promises.
 "The state must also prove that the accused had the intent to deprive the victims of their property. 'Deprive' is *Page 1090 
defined in § 13A-8-1(2)(b), Code of Alabama 1975:
" '(2) To "DEPRIVE . . ." means:
" '. . . .
 " 'b. To dispose of the property so as to make it unlikely that the owner would recover it;'
"* * *
 "The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. McMurphy v. State, 455 So.2d 924 (Ala.Crim.App. 1984), Craig v. State, 410 So.2d 449 (Ala.Crim.App.), cert. denied, 410 So.2d 449 (Ala. 1982). In McMurphy our court again laid out the rule that fraudulent intent need not be proven by direct substantive evidence but rather can be inferred from conduct of the defendant and the circumstances of the case. See Cottonreeder v. State, 389 So.2d 1169, 1174 (Ala.Crim.App. 1980). A prima facie case was made." Loper, 469 So.2d at 710.
 II
The defendant argues that the State's evidence was not sufficient to support the jury's verdict. We disagree. The standard for appellate review of the sufficiency of the evidence in a case such as this is set out in Dolvin v. State,391 So.2d 133 (Ala. 1980). See also White v. State,546 So.2d 1014 (Ala.Cr.App. 1989). Applying the principles set out in those cases to the present one, we find that there was legal evidence from which the jury might reasonably have found that the evidence excluded every reasonable hypothesis except that of the defendant's guilt.
 III
The defendant contends that the trial judge committed reversible error in refusing to give his requested jury charge number 10. A review of the record reveals that the only objection raised by the defendant concerning the refusal of the trial court to give the requested charge was the following statement: "Your Honor, I would like to at this time enter an objection to refusal of defendant's requested jury charge number ten." This was not a proper objection.
 "According to Rule 14, Alabama Temporary Rules of Criminal Procedure:
 " 'No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection.'
 "Thus, it is clear that in order for the issue of the court's failure to give a requested jury charge to be preserved, the appellant must give the reasons for his objection, as required by Rule 14. Thompson v. State, 473 So.2d 1205, 1208
(Ala.Cr.App. 1985). 'Defendant must object specifically to each of the charges refused, Curtis v. State, 424 So.2d 679 (Ala.Cr.App. 1982), and the grounds assigned must be specific. Rowe v. State, 421 So.2d 1352 (Ala.Cr.App.), cert. denied (1982).' Harbor v. State, 465 So.2d 455, 459 (Ala.Cr.App. 1984), writ quashed, 465 So.2d 460 (Ala. 1985). The appellant's general objection to the court's refusal of the numbered charges was not sufficient. Id. See also Bell v. State, 473 So.2d 622
(Ala.Cr.App. 1985); Vaughn v. State, 473 So.2d 661
(Ala.Cr.App. 1985)." Kinder v. State, 515 So.2d 55, 61-62 (Ala.Cr.App. 1986).
Here, the defendant did not give the grounds for his objection to the trial court's refusal to give his requested charge, as is required by Rule 14, Alabama Rules of Criminal Procedure (Temporary). Accordingly, the defendant cannot now assign as error the court's refusal to give the requested instruction. This issue was not preserved for our review.
This case is due to be affirmed.
AFFIRMED.
All Judges concur. *Page 1091