BASCHAB, Judge.
The appellant, Jerry Allen Barnette, was convicted of bribing a witness, a violation of § 13A-10-121(a)(l), Ala. Code 1975. The trial court sentenced him to serve a term of seven years in prison. The appellant did not file any post-judgment motions. This appeal followed.
W.G., S.M.’s stepfather, testified that an incident involving a sexual assault of fourteen-year-old S.M. was reported to law enforcement authorities on November 22, 1999. Shortly thereafter, the appellant telephoned him and said he wanted “to talk with [him] on the situation.” (R. 146.) W.G. initially told the appellant he could not meet with him, but changed his mind after he contacted Sergeant Erich Babbitt, the detective who was in charge of the investigation.
On November 29, 1999, law enforcement officers put a body microphone on W.G., and W.G. went to the appellant’s barbershop and met the appellant. W.G. and the appellant then went across the street to a gasoline station to talk privately. During that conversation, the appellant told W.G. that “Kenny had put his foot in his mouth or something, and [they] discussed the fact about him supposed to be trying to get the situation squashed or something”; that he was acting as the “middle man” or “in-between”; that S.M. “was supposed to had did some oral sex or something”; and that a prosecution “would hurt both sides of the family.” (R. 152, 153.) W.G. testified that his trailer was in a trailer park owned by Williford. He also testified that the appellant offered him “a couple of thousands” dollars to move the mobile home; showed him “a lot” of money; told him he could “pay for everything”; and told him S.M. would have to “tell the police that the — it didn’t happen.” (R. 154, 155, 156.) After W.G. told the appellant he had to discuss the matter with his wife, the appellant *1131 wrote his home telephone number on a card, gave it to him, and told him to call him at any time.
Subsequently, W.G. telephoned the appellant, and they agreed to meet again. A few days later, they met at the gasoline station. At that time, the appellant had “a wad of money” and said “he could take care of everything.” (R. 160.) Specifically, he said he would move W.G.’s mobile home and set it up anywhere W.G. wanted, pay six months rent, pay W.G. if he was off of work, and pay for a lawyer if W.G. needed one. At the end of the meeting, the appellant put the money on a newspaper stand and told W.G. he was giving it to him “in good faith that he will take care of all of that.” (R. 162.) W.G. testified that he took the money, that it was $500, and that he turned it over to Babbitt.
Erich Babbitt testified that, in November 1999, he was a detective with the Opelika Police Department and that he was assigned to investigate charges that Kenneth Williford had raped and sodomized S.M. He also stated that the report was made on November 22, 1999, that the investigation began immediately, that a forensic sexual assault exam was performed on S.M. at the hospital, and that he started interviewing witnesses. Babbitt testified that he talked to W.G. and S.M.’s mother and that they had been informed about the investigation. On November 29, 1999, W.G. told him a man who had identified himself as Jerry Barnette had telephoned him at work and said he wanted to meet with him. Subsequently, W.G. agreed to wear a body wire, and they arranged a meeting between W.G. and the appellant for later that day.
Babbitt, who monitored the meeting at the gasoline station, testified that W.G. asked the appellant what he wanted regarding the rape case. The appellant told him that he was a good friend of Willi-ford’s family; that he knew what was going on; that Williford had told him S.M. had “given him a blow job, and that she had rubbed his stuff all over her” and that he knew he had “f-up”; that “they wanted to do whatever they could to make the whole thing just go away”; that the situation would be “a big issue” for both families; that “they were willing to do whatever it took to make this whole rape and sodomy case just — just go away;” and that “ “we want [S.M.] to say this whole thing never happened’ ” and to tell law enforcement officers she had made up the allegations. (R. 187, 188.) When W.G. asked the appellant what he was offering, the appellant told him that they were willing to move his mobile home and pay to have it set up again, that they would give him several thousand dollars under the table, and that they would pay any attorney fees W.G.’s family might incur if S.M. got into trouble for saying she had made up the story. W.G. told the appellant he wanted to talk to his wife before they decided whether to accept the offer. The appellant then wrote his home and work telephone numbers on a business card, gave it W.G., and told W.G. to get back in touch with him.
On December 1, 1999, W.G. contacted Babbitt and told him the appellant had contacted him in person and said he wanted to meet with him and discuss the situation again. On December 2, 1999, W.G. and the appellant set up another meeting for December 6, 1999. On December 6, 1999, W.G. and the appellant met at the same BP station. Before that meeting, Babbitt put another body wire on W.G., and he and another detective monitored that meeting. During that meeting, the appellant told W.G. that, if he would influence S.M. to tell law enforcement officers she had lied, he would help them hire an attorney if they got into any legal trouble. *1132 He also again told W.G. he would help him move his mobile home and pay for all of his moving expenses. He then took out some money, said he would leave it for W.G. to pick up, and said there would be three times that amount if W.G. cooperated. W.G. told the appellant he would get back with him, picked up the money, left the area, and met with the officers. Babbitt testified that the money consisted of $500 in $20 bills.
The appellant argues that the State did not present sufficient evidence to support his conviction.
“A person commits the crime of bribing a witness if he offers, confers or agrees to confer any thing of value upon a witness or a person he believes will be called as a witness in any official proceeding with intent to:
“(1) Corruptly influence the testimony of that person.... ”
§ 13A-10-121(a), Ala.Code 1975 (emphasis added). An “official proceeding” is “[a]ny proceeding heard before any legislative, judicial, administrative or other government agency or official authorized to hear evidence under oath.” § 13A-10-100(b)(5), Ala.Code 1975. Finally,
“[a] ‘material element’ of the crime of bribery is the defendant’s corrupt ‘intent’ at the time of the offense. Roden v. State, 5 Ala.App. 247, 254, 59 So. 751 (1912), quoted in Pope v. State, 365 So.2d 369, 372-73 (Ala.Cr.App.1978).... As this court has noted, proof of the appellant’s ‘intent’ can be inferred from all of the surrounding circumstances. Paige v. State, 494 So.2d 795 (Ala.Cr.App.1986).
“... ‘It is largely a question of fact, rather than a question of law, for the determination of the jury, whether particular conduct, or particular expressions of the accused, refer to a criminal offense, and spring from his consciousness of guilt.’ Pope v. State, 365 So.2d 369, 374 (Ala.Cr.App.1978).”
Maddox v. State, 520 So.2d 143, 148 (Ala.Crim.App.1986).
“In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state’s evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala.Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980). The trial court’s denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969); Willis v. State.”
Breckenridge v. State, 628 So.2d 1012, 1018 (Ala.Crim.App.1993).
“ ‘In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the *1133 State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.’ Faircloth v. State, 471 So.2d 485, 489 (Ala.Cr.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
“ ‘ “The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches “a clear conclusion that the finding and judgment are wrong.” Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962).... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). “[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.” Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).’ Granger [v. State], 473 So.2d [1137,] 1139 [(Ala.Crim.App.1985)].
“... ‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.’ White v. State, 294 Ala. 265, 272, 314 So.2d 857, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). ‘Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.’ Cochran v. State, 500 So.2d 1161, 1177 (Ala.Cr.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).”
White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989). Also,
“ ‘[cjircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt. Ward v. State, 557 So.2d 848 (Ala.Cr.App.1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979).’
“Ward, 610 So.2d at 1191-92.”
Lockhart v. State, 715 So.2d 895, 899 (Ala.Crim.App.1997).
“ ‘Intent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.’ McCord v. State, 501 So.2d 520, 528-529 (Ala.Cr.App.1986), quoting Pumphrey v. State, 156 Ala. 103, 47 So. 156 (1908).”
French v. State, 687 So.2d 202, 204 (Ala.Crim.App.1995), aff'd in part, rev’d in part on other grounds, 687 So.2d 205 (Ala.1996). Finally,
“ ‘[t]he question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. *1134 McMurphy v. State, 455 So.2d 924 (Ala.Crim.App.1984); Craig v. State, 410 So.2d 449 (Ala.Crim.App.1981), cert. denied, 410 So.2d 449 (Ala.1982). Loper v. State, 469 So.2d 707, 710 (Ala.Cr.App.1985).”
Oryang v. State, 642 So.2d 989, 994 (Ala.Crim.App.1994).
A.
Initially, the appellant contends that the State did not prove that W.G. and S.M. were witnesses in an official proceeding.[1] However, § 13A-10-121(a)(l), Ala. Code 1975, includes the language “a person he believes will be called as a witness in any official proceeding.” In cases like this, where official proceedings have not yet begun and the witnesses have not been named, it is sufficient that the defendant believes that a person will be called as a witness in an official proceeding.
The appellant further contends that the State did not prove that he paid S.M. anything of value or that he had any direct contact with her. However, the State presented testimony that the appellant had offered W.G. money and had offered to pay various expenses for W.G. if W.G. would influence S.M. to change her statements regarding the rape and sodomy charges. Section 13A-10-121, Ala.Code 1975, does not specifically require that the defendant contact or speak directly to the person whose testimony he is attempting to influence. Therefore, the fact that the appellant did not contact or speak directly to S.M. is not fatal to this case.
Based on the evidence the State presented, the jury could have reasonably concluded that, even though there was not any official proceeding pending at the time of the appellant’s actions, the appellant believed W.G. and/or S.M. would be called as a witness in an official proceeding; that he offered, conferred, or agreed to confer a thing of value upon W.G. and/or S.M. to prevent one or both of them from testifying during any official proceedings that might be instituted; and that he did so with the intent to corruptly influence W.G. and/or S.M.’s testimony during any such proceedings.
B.
The appellant also contends that the State did not prove that an official proceeding had commenced at the time the bribery took place.[2] However, § 13A-10-121(a)(1), Ala.Code 1975, includes the language “a person he believes will be called as a witness in any official proceeding.” In cases in which official proceedings have not yet begun, it is sufficient that the defendant believe that a person will ultimately be called as a witness in an official proceeding. Based on the evidence the State presented, the jury could have reasonably concluded that, even though there was not any official proceeding pending at the time of the appellant’s actions, the *1135 appellant believed an official proceeding would be initiated and believed W.G. and/or S.M. would be called as a witness in that proceeding.
For these reasons, the appellant’s arguments are without merit. Accordingly, we affirm the trial court’s judgment.
AFFIRMED.
McMILLAN, P.J., and COBB, SHAW, and WISE, JJ., concur.

. The indictment alleged that the appellant
“did offer, confer or agree to confer a thing of value, to-wit: lawful paper currency of the United States of America, the exact denominations of which are unknown to the Grand Jury, upon [W.G.] and/or [S.M.], a witness or a person he believed would be called as a witness in an official proceeding, to-wit: Spring Term of the Grand Jury of the 37th Judicial Circuit of Alabama, with intent to corruptly influence the testimony of that person, in violation of § 13A-10-121 of the Code of Alabama, against the peace and dignity of the State of Alabama."
(C.R.6.)

. On December 14, 1999, the magistrate signed warrants for Williford's arrest for first-degree rape and first-degree sodomy. Subsequently, during its Spring 2000 Term, the Lee County Grand Jury returned indictments against Williford for the first-degree rape and first-degree sodomy of S.M.