SHAW, Judge.
The appellant, Renaul Maurice Johnson, was convicted of intimidating a witness, a *981 violation of § 13A-10-128, Ala.Code 1975, and of assault in the second degree, a violation of § 13A-6-21 (a)(5), Ala.Code 1975. He was sentenced, as a habitual offender, to 25 years’ imprisonment for each conviction.
On appeal, Johnson contends that the trial court erred in denying his motion for a judgment of acquittal because, he says, the evidence was insufficient to sustain either of his convictions. We disagree.
The evidence adduced at trial indicated the following. On September 18, 2003, Sandra Brown Joyner, principal of Montana Magnet School in Dothan, paddled a kindergarten student, K.E., Johnson’s nephew, because K.E. had punched another student in the mouth. Joyner discussed the paddling with KE.’s mother, father, and grandmother the same day. This discussion escalated into an argument during which K.E.’s mother, Johnson’s sister, struck Joyner. Joyner asked KE.’s mother to leave the school, notified the police, and ultimately filed a complaint against the mother.
The following day, September 19, 2003, Johnson went to the school dressed as a woman, introduced himself as Arial Adula, and politely told Joyner that he needed to talk to her about a student. Joyner escorted Johnson into her office, at which point Johnson stated that he wanted to discuss K.E. Joyner refused to talk to Johnson about K.E. because he was not KE.’s parent or legal guardian. At this point, Johnson’s demeanor then became threatening. According to Joyner, Johnson said “if you know what is good for you, you’ll listen to me” (R. 52), and “there ain’t no way a white bitch sitting in a black school in a black community is going to tell me whether I can come in this school or not.” (R. 54.) Joyner testified that Johnson further stated
“that [he] had at least 15 family members that were willing to come to this school. In other words, to get to this matter about [K.E.] And he said if it had happened earlier in the day — -it all happened about two-thirty — if it had happened earlier in the day, we would have come. And he said, T want you to understand if this goes any further, gets any further, it is going to come to your house.’ ”
(R. 56.) Also, Joyner testified that Johnson said during the altercation “that he would kick my ass if I filed any warrant against either of them [Johnson or his sister, KE.’s mother].” (R. 75.) After this altercation, Joyner feared for her safety, for the safety of her husband, and for the safety of the children at the school. She filed a complaint against Johnson on September 26, 2003, charging him with harassment.
Joyner encountered Johnson again on the morning of September 30, 2003, as she was entering the school. Joyner testified that as she entered the school and started down the hall, “something grabbed me in the back and got a hold of my hair and jerked my head down — I felt, as hard as a person could do that.” (R. 78.) Joyner said that Johnson then “slapped [her] across the face as hard as he could” (R. 79), and said, “[T]his will teach you to get out a warrant.” (R. 80.) Joyner then yelled for assistance and Johnson fled. At trial, Johnson denied grabbing Joyner’s hair and jerking her head, but admitted that he slapped her.
Joyner testified that she suffered whiplash-like symptoms in her neck and shoulder as a result of Johnson’s jerking her head and that her neck and shoulder “hurt a lot.” (R.81.) Although she did not go to the hospital that day, Joyner went to see her doctor the next day. He referred her to a licensed physical therapist, Bobby *982 Perkins. Perkins testified when he saw her, Joyner had pain in her neck and shoulder and decreased movement in her neck; specifically, he said that Joyner suffered “about a fifty-percent decrease in right and left rotation” of her neck. (R. 210.) Joyner had three physical therapy sessions with Perkins over a period of two weeks. Perkins treated her with ultrasound, deep heat, muscle stimulation, stretching, and soft-tissue massage. Eventually, her injuries healed.
“ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’ ” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). “ ‘The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.’ ” Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “ ‘When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.’ ” Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). “The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
Johnson first contends that the evidence was insufficient to sustain his conviction for intimidating a witness because, he says, the State failed to prove that there was an “official proceeding” pending against him at which Joyner would be a witness. According to Johnson, § 13A-10-123, Ala.Code 1975, requires that an official proceeding be pending before an accused can be convicted of intimidating a witness. This argument is meritless.
First, contrary to Johnson’s contention, the State proved that an “official proceeding” was pending against him at which Joyner would be a witness at the time of his second encounter with Joyner on September 30, 2003. Section 13A-10-100(a)(5), Ala.Code 1975, defines “official proceeding” as “[a]ny proceeding heard before any legislative, judicial, administrative or other government agency or official authorized to hear evidence under oath.” Rule 2.1, Ala.R.Crim.P., provides that “[a]ll criminal proceedings shall be commenced either by indictment or by complaint.” (Emphasis added.) As noted, Joyner filed a complaint against Johnson in the Dothan Municipal Court charging harassment, on September 26, 2003, four days before Johnson returned to the school on September 30, 2003. This complaint commenced a criminal proceeding against Johnson for harassment. Thus, the State proved that there was an “official proceeding” pending against Johnson, a criminal proceeding charging him with harassment, at which Joyner, the victim of the harassment, would be a witness.
Second, even if there were no official proceeding pending against Johnson at the time of the September 30, 2003, incident, § 13A-10-123, Ala.Code 1975, does not, as Johnson contends, require that an official proceeding be pending before an accused *983 can be convicted of intimidating a witness. Section 13A-10-123 provides, in pertinent part:
“(a) A person commits the crime of intimidating a witness if he attempts, by use of threat directed to a witness or a person he believes will be called as a witness in any official proceedings, to:
“(1) Corruptly influence the testimony of that person;
“(2) Induce that person to avoid legal process summoning him to testify; or
“(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.”
(Emphasis added.) Although this Court has never addressed this specific argument with respect to the statute making it an offense to intimidate a witness, we have addressed the argument with respect to the statute making it an offense to bribe a witness, § 13A-10-121, which is substantially similar to § 13A-10-123.
Section 13A-10-121 provides, in pertinent part:
“(a) A person commits the crime of bribing a witness if he offers, confers or agrees to confer any thing of value upon a witness or a person he believes will be called as a ivitness in any official proceeding with intent to:
“(1) Corruptly influence the testimony of that person;
“(2) Induce that person to avoid legal process summoning him to testify; or
“(3) Induce that person to absent himself from an official proceeding to which he has been legally summoned.”
(Emphasis added.) In addressing a similar issue in Barnette v. State, 855 So.2d 1129 (Ala.Crim.App.2003), this Court stated:
“The appellant also contends that the State did not prove that an official proceeding had commenced at the time the bribery took place. However, § 13A-10 — 121(a)(1), Ala.Code 1975, includes the language ‘a person he believes will be called as a witness in any official proceeding.’ In cases in which official proceedings have not yet begun, it is sufficient that the defendant believe that a person will ultimately be called as a witness in an official proceeding. Based on the evidence the State presented, the jury could have reasonably concluded that, even though there was not any official proceeding at the time of the appellant’s actions, the appellant believed an official proceeding would be initiated and believed W.G. and/or S.M. would be called as a witness in that proceeding.”
855 So.2d at 1134-35. Just as with bribing a witness under § 13A-10-121, an official proceeding need not be pending for an accused to be convicted of intimidating a witness under § 13A-10-123; the only requirement is that the accused believe that the person he or she is accused of intimidating will ultimately be called as a witness in an official proceeding.
In this case, there was ample evidence from which the jury could have concluded that Johnson believed that Joyner would ultimately be called as a witness in an official proceeding. During the first incident on September 19, 2003, Johnson said that “he would kick [Joyner’s] ass if [Joyner] filed any warrant against either of them [Johnson or his sister].” (R. 75.) Several days later, Joyner did, in fact, file a complaint against Johnson for harassment. When Johnson attacked Joyner on September 30, 2003, he said, “[T]his will teach you to get out a warrant.” (R. 80.) Even if we were to determine that the complaint filed by Joyner did not commence an official proceeding, from this *984 evidence the jury could have concluded that Johnson knew about the complaint and warrant against him and that he believed that Joyner would be called as a witness in a future official proceeding stemming from the complaint. Therefore, the trial court properly denied Johnson’s motion for a judgment of acquittal as to the intimidating-a-witness charge.
Johnson also contends that the evidence was insufficient to sustain his conviction for second-degree assault because, he says, the State failed to prove that Joyner sustained physical injury.
Section 13A-6-21(a) provides, in pertinent part:
“(a) A person commits the crime of assault in the second degree if the person does any of the following:
[[Image here]]
“(5) With intent to cause physical injury to a teacher or to an employee of a public educational institution during or as a result of the performance of his or her duty, he or she causes physical injury to any person.”
Section 13A-1-2(12), Ala.Code 1975, defines physical injury as “[ijmpairment of physical condition or substantial pain.”
In Burger v. State, 915 So.2d 586 (Ala.Crim.App.2005), this Court held that kicking a police officer three times in the shins and stomping his foot, which the officer said “ ‘caused a great deal of pain,’ ” was sufficient evidence to establish that the officer suffered a physical injury, 915 So.2d at 589; we explained:
“Here, the testimony of the two officers was sufficient to establish that Officer Walker had suffered ‘physical injury.’ This court has held that the definition of physical in1jury includes a ‘black eye,’ South v. City of Mountain Brook, 688 So.2d 292, 297 (Ala.Crim.App.1996); a ‘busted lip’ and ‘skint nose,’ Eubanks v. State, 611 So.2d 448, 450 (Ala.Crim.App.1992); and several kicks to the groin that ‘hurt for a second,’ Striplin v. City of Dothan, 607 So.2d 1285, 1287 (Ala.Crim.App.1992).”
915 So.2d at 589.
The State presented ample evidence from which the jury could have reasonably concluded that Johnson caused Joyner substantial pain and impairment of physical condition. Joyner testified that when Johnson jerked her head back, “[i]t hurt, [i]t hurt a lot” (R. 85); that when she began physical therapy a week after the attack, she was still in substantial pain; and that her doctor prescribed pain medication. In addition, Joyner’s physical therapist, Bobby Perkins, testified that Joyner temporarily suffered a 50% decrease in the range of motion in her neck. From the foregoing evidence, the jury could have reasonably concluded that Joyner suffered both substantial pain and impairment of physical condition as a result of Johnson’s actions.[1] Therefore, the trial *985 court properly denied Johnson’s motion for a judgment of acquittal as to the assault charge.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and COBB, BASCHAB, and WISE, JJ., concur.

. We note that Johnson's reliance on Campbell v. State, 709 So.2d 1353 (Ala.Crim.App.1997), and Crear v. State, 591 So.2d 530 (Ala.Crim.App.1991), is misplaced. In Campbell, police officers were dispatched to the home of the appellant and his wife; upon arriving, they found the appellant’s wife on the sofa with bruises on her face and wrist; the appellant was asleep in the bedroom. The only person to testify at trial was the police officer who found the appellant’s wife. The appellant was convicted of third-degree assault, and this Court reversed on the ground that the evidence was insufficient to sustain the conviction. Although the appellant argued on appeal, in part, that there was no evidence that his wife suffered any physical injury, this Court did not, as Johnson claims, reverse on that ground; rather, this Court held that "[t]he circumstantial evidence presented by the State could be reconciled with other theories, e.g., that someone other than Campbell committed the assault or even that the injuries were the result of an accident.” 709 *985 So.2d at 1355. In addition, this Court did not, as Johnson claims, reverse the appellant’s conviction in Crear on the ground that the injuries suffered by the police officers did not constitute physical injury. To the contrary, this Court held that "[tjhere was sufficient evidence from which the jury could reasonably conclude that both officers suffered ‘impairment of physical condition’ and 'substantial pain,' that is, that the appellant caused them 'physical injury.’ ” 591 So.2d at 533. This Court reversed the appellant’s conviction in Crear on the ground the trial court had erred in not instructing the jury on resisting arrest as a lesser-included offense of assault; we stated that “[wjhile there was sufficient evidence of ‘physical injury’ to the officers here to present a jury question on assault, .... there was [also] a reasonable theory from the evidence to support a verdict that the officers did not suffer 'impairment of physical condition or substantial pain.' ” 591 So.2d at 534.