JOINER, Judge.
Sara Courtney Habel was convicted of first-degree perjury, see § 13A-10-101, Ala. Code 1975, and was sentenced to seven years' imprisonment.[1] Habel's sentence was split, and she was ordered to serve 30 days followed by 5 years' supervised probation. Habel was ordered to pay a $100 fine, a $100 crime-victims-compensation assessment, a $150 bail-bond fee, court costs, and attorney's fees.
Facts and Procedural History
The State's evidence at trial tended to show the following: In February 2015, Habel alleged that her husband, Matthew, had sexually abused their two children, M.H. and S.H. Habel and Matthew were involved in divorce proceedings when she made the allegations. Deputy Eugene Nash of the Madison County Sheriff's Department, who was assigned to the National Children's Advocacy Center ("NCAC"), initiated a criminal investigation. Because the allegations involved possession and production of child pornography, Deputy Nash informed Special Agent Troy McCarter of the United States Department of Homeland Security about the investigation.
On March 16, 2015, Agent McCarter searched Matthew's house and seized several electronic devices. Agent McCarter testified that Matthew was distraught but extremely cooperative and that the search failed to uncover any evidence of child pornography. On April 6, 2015, Agent McCarter interviewed Habel; during the interview, he informed her that it was a crime to lie to law-enforcement officials. Habel then provided a sworn affidavit detailing her allegations against Matthew[2] and signed the affidavit in the presence of Agent McCarter and Special Agent Derrick Moore.[3]
Habel's affidavit, which the State introduced as an exhibit, had a heading stating *653 "Department of Homeland Security, U.S. Immigration and Customs Enforcement, State of Alabama, County of Madison" and began with the statement, "I, Sara Courtney Habel, being duly sworn, state the following." (C. 108.) The affidavit was four pages in length. Habel initialed the first page and signed each subsequent page under a statement that read: "The contents of this statement are true and correct to the best of my knowledge and belief. I have provided the above statement freely and voluntarily without any threats or coercion." (C. 109-11.) Agent McCarter signed each page; his signature on the second, third, and fourth pages appeared under a statement that read: "Subscribed and sworn to me on 6 in the month of April in the year of 2015." (C. 109-11.) Pages two, three, and four were signed by the witness, Agent Moore.
December Guzzo, a child-forensic-interview specialist with the NCAC, interviewed M.H. on February 9, 2015. Guzzo testified that, during that interview, M.H. did not "make any specific allegations about sexual abuse ... committed by her father." (R. 99.) Guzzo stated that during a second interview conducted on February 23, 2015, M.H. "pretty much disclose[d] almost right away."[4] (R. 103.)
Beth Jackson, a therapist and program manager at the NCAC, treated M.H. from May 2015 through February 2016. Jackson testified:
"[M.H.] told me that her mom made her feel uncomfortable by asking her to lie about what daddy did. And I asked her what that lie was and she said, 'To say that he touched me.' I asked her, 'Where did you, did you say that he had to touch you?' And she said, 'On my privates and on my bottom.' "
(R. 108.)
M.H., who was eight years old at the time of trial, testified that her father never touched her or S.H. inappropriately; that her father never touched himself inappropriately in front of her or S.H.; and that her father never showed her any "naked people" on his cellular telephone. M.H. stated that she had made up those allegations on her own and that Habel had not pressured her to lie about her father. When asked why she said her "dad had done that stuff," M.H. shrugged her shoulders and responded that she did not know. M.H. testified that she did not want anyone to get in trouble.
Matthew testified that he never touched M.H. inappropriately; that he never touched himself in front of her in an inappropriate manner; that he never discussed "masturbation, male or female, child porn, anything like that" with M.H. (R. 78); that he never viewed child pornography; and that he never viewed adult pornography in the presence of his children. Matthew testified that, during M.H.'s last visit with Habel, which occurred two days before the trial,
"[M.H.] stated that her mother asked her about the case and with, um, what she had talked about, uh, with the D.A. And [M.H.] said that she refused. She was asked again. And Sara [Habel] stated that-per [M.H.], Sara stated that, um, she wouldn't talk to her again if she did not tell her what she had talked about with the lawyers.
"[M.H.] told me that she stomped her foot and said, 'No, I'm not going to tell you and you will talk to me again.' And *654 five or 10 minutes later [M.H.] said her mother talked to her again and she said, 'See, I told you you would talk to me again.' "
(R. 85.)
After the State rested, Habel moved for a judgment of acquittal, and the circuit court denied her motion.
Habel testified in her own behalf and stated that she believed the allegations of abuse. On direct examination by the defense, Habel testified as follows:
"Q. Let me ask you did you, did you, in fact, ask your daughter to lie about her father?
"A. I did not.
"Q. Did you give her information to say when she went in to talk to Ms. Guzzo or the second interview?
"A. No.
"Q. Did you threaten your daughter in any way if she didn't tell something in your behalf?
"A. No.
"Q. Or if she didn't tell something on her father?
"A. No.
"....
"Q. Okay. And we've heard some testimony today. Did you, in fact, talk to your daughter Sunday about her testimony here today?
"A. No.
"Q. Did you bring it up?
"A. No.
"Q. Did you ask her what [the prosecutor] said to her?
"A. No.
"Q. Did you have any intent to mislead [Agent] McCarter about what you wrote in your statement?
"A. No.
"Q. Did you make it up?
"A. No.
"....
"Q. All right. But in point of fact, did you contemplate, create in your mind, engineer a story whereby your children would accuse him of something so that you would win custody?
"A. No."
(R. 136-39.)
At the close of the evidence, Habel renewed her motion for a judgment of acquittal, and the circuit court again denied it. Habel was ultimately convicted of first-degree perjury.
Habel filed a motion for a new trial alleging, among other things, that the verdict was contrary to the great weight of the evidence, that the State's evidence was insufficient to sustain her conviction, and that her conviction was contrary to the law. The circuit court denied Habel's motion.
On appeal, Habel raises several issues. We address each in turn.
Discussion
I.
Initially, we note that several of the arguments Habel raises on appeal fail to comply with Rule 28(a)(10), Ala. R. App. P., and, therefore, are deemed waived.[5] See Hooks v. State, 141 So.3d 1119 (Ala. Crim. App. 2013). Rule 28(a)(10), Ala. R. App. P., provides, in relevant part, that appellate briefs must include "[a]n argument containing the contentions of the appellant/petitioner with respect to the issues *655 presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on."
This Court has previously stated:
" ' "[R]ecitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed." Hamm v. State, 913 So.2d 460, 486 (Ala. Crim. App. 2002). "An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument." Ex parte Riley, 464 So.2d 92, 94 (Ala. 1985) (citations omitted). "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research." City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998).' "
Taylor v. State, 157 So.3d 131, 143 (Ala. Crim. App. 2010).
" '[A]pplication of Rule 28(a)(10) to find a waiver of arguments in an appellate brief has been limited to those cases in which the appellant presents general assertions and propositions of law with few or no citations to relevant legal authority, resulting in an argument consisting of undelineated general propositions unsupported by sufficient legal authority or argument. Although Rule 28(a)(10) is to be cautiously applied, it has been applied recently by the Alabama Supreme Court and by this Court when appropriate ....' "
McWhorter v. State, 142 So.3d 1195, 1236 (Ala. Crim. App. 2011).
In the statement-of-issues section of her brief on appeal, Habel contends that the circuit court erred when, she says: (1) it did not dismiss the "first-degree perjury charge when [Habel] did not make [her statement] knowing it to be false, as it relates to the definition of first-degree perjury"[6] (Habel's brief, p. 3); (2) it denied her "appointed counsel at a critical stage of a proceeding in which she faced incarceration if convicted"[7] (Habel's brief, p. 3); (3) it denied her "volunteer counsel a continuance, preventing counsel from preparing for trial and providing [Habel] with competent counsel"[8] (Habel's brief, p. 3); and (4) it allowed the State "to have the child's therapists testify as to what the child said to them when the child could not waive the privilege of confidentiality."[9] (Habel's brief, p. 4.)
Aside from her claim that she did not knowingly make a false statement, Habel does not address these issues in the argument section of her brief. With respect to that claim, Habel's argument consists entirely *656 as follows: "Sara Habel believed with all her heart that her children were being harmed; she still believes it. She did not knowingly make a false statement to discredit or have her husband charged, as argued by the State's attorney. (R-9.)." (Habel's brief, p. 11.) In the conclusion section of her brief, Habel briefly references the remaining issues listed above; she does not, however, support her claims with citations to the record or to any legal authority whatsoever. Habel's arguments, therefore, are merely "undelineated general propositions unsupported by sufficient legal authority or argument." McWhorter, 142 So.3d at 1236. Accordingly, these claims are deemed waived, and Habel is not entitled to relief on these issues.
II.
Habel contends that the State failed to present sufficient evidence to sustain her conviction because, she says, the false statement at issue was not made during an official proceeding, as that term is defined in § 13A-10-100, Ala. Code 1975, and as is required for a first-degree-perjury conviction pursuant to § 13A-10-101.[10] Specifically, Habel claims that the State
"used [her] statement to law enforcement, notarized, to accommodate first-degree perjury. The criminal charge indicated that since the statement was notarized, it was a proceeding. An investigation is not a proceeding, and notarizing a signature does not make it one anymore than someone signing their name before a notary to complete a sworn pleading is a proceeding. The proceeding is one wherein testimony is taken or a person takes an oath. Notarizing a signature is affirming that person's identity, not swearing them in for testimony."
(Habel's brief, pp. 10-11). According to Habel, §§ 13A-10-100 and 13A-10-101, Ala. Code 1975, limit official proceedings to "actual proceedings-i.e., grand jury, preliminary hearing, trial, ethics hearings-places where one would be sworn to testify." (Habel's brief, p. 10.) We disagree.
The indictment against Habel reads:
"The Grand Jury of said County charge, that before the finding of this indictment, SARA COURTNEY HABEL, whose name is unknown to the Grand Jury other than as stated, did swear falsely in an official proceeding, to-wit: the criminal investigation into Matthew Habel, and her false statement was material to the proceeding, to-wit: she swore that her children had been sexually abused by her husband when they had not, in violation of Section 13A-10-101 of the CODE OF ALABAMA, against the peace and dignity of the State of Alabama."
(C. 11.)
On April 18, 2017, Habel moved to dismiss the first-degree-perjury charge against her, stating:
"In response to the discovery request, the undersigned was given only an affidavit made to a police officer in the course of his investigation as the basis for one count of perjury in the first degree. The difference between perjury first degree and perjury second degree is that perjury first is made under oath in an official proceeding. The statement to police does not constitute a statement made under oath in an official proceeding. The indictment refers to the police report-which does not constitute perjury in the first degree, but, rather, perjury in the second degree.
*657 "There is either discovery that has not been provided to the defense, or this matter is due to be dismissed, because no sworn statement given in an official proceeding has been provided by the State. There isn't a scintilla of evidence to support a felony indictment ...."
(C. 60.)
The circuit court held a hearing at which Habel reiterated the argument presented in her written motion. In response, the State argued that a criminal investigation is considered an official proceeding because it is conducted by "somebody that has been authorized to administer oaths and that intends that it will constitute a proceeding or an ultimate trial [on] the issue." (R. 10.) The State then presented evidence that Agent McCarter was authorized "to administer oaths as part of his duties." (R. 12.) Relying on the definition of "official proceeding" as discussed in Johnson v. State, 932 So.2d 979 (Ala. Crim. App. 2005), the circuit court denied Habel's motion.
This Court has stated:
" 'In any case involving statutory construction, our inquiry begins with the language of the statute, and if the meaning of the statutory language is plain, our analysis ends there. Ex parte Moore, 880 So.2d 1131, 1140 (Ala. 2003) (" ' "The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute." ' ")(quoting Ex parte Weaver, 871 So.2d 820, 823 (Ala. 2003), quoting in turn Ex parte State Dep't of Revenue, 683 So.2d 980, 983 (Ala. 1996) ). This Court in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270-275-76 (Ala. 1998), explained:
" ' "In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
" ' " ' "Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." ' "
" ' 729 So. 2d at 275-76 (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998), additional citations omitted). See also 729 So.2d at 276 (explaining that the separation-of-powers doctrine requires a court to use the plain-meaning rule in construing a statute and that "only if there is no rational way to interpret the words as stated will [a court] look beyond those words to determine legislative intent").' "
Beecham v. State, 135 So.3d 988, 991-92 (Ala. Crim. App. 2013) (quoting Ex parte McCormick, 932 So.2d 124, 132 (Ala. 2005) ).
Habel was indicted and tried under § 13A-10-101, Ala. Code 1975, which provides that "[a] person commits the crime of perjury in the first degree when in any official proceeding he swears falsely and his false statement is material to the proceeding in which it is made." Looking at the plain language of the statute, in order to convict under Alabama's first-degree-perjury statute, the State must prove that the defendant's false statement was made during an "official proceeding." § 13A-10-101, Ala. Code 1975. Section 13A-10-100 defines "official proceeding" as "[a]ny proceeding heard before any legislative, judicial, administrative or other government *658 agency or official authorized to hear evidence under oath."
Although we can find no Alabama caselaw addressing the issue whether submitting a sworn affidavit to a law-enforcement official during a criminal investigation constitutes an official proceeding as that term is defined in § 13A-10-100, Ala. Code 1975, this Court has discussed the meaning of "official proceeding" as it relates to intimidating a witness, § 13A-10-123, Ala. Code 1975-an offense subject to the definitions in § 13A-10-100 -in Johnson v. State, 932 So.2d 979 (Ala. Crim. App. 2005) :
"Johnson first contends that the evidence was insufficient to sustain his conviction for intimidating a witness because, he says, the State failed to prove that there was an 'official proceeding' pending against him at which Joyner would be a witness. According to Johnson, § 13A-10-123, Ala. Code 1975, requires that an official proceeding be pending before an accused can be convicted of intimidating a witness. This argument is meritless.
"First, contrary to Johnson's assertion, the State proved that an 'official proceeding' was pending against him at which Joyner would be a witness at the time of his second encounter with Joyner on September 30, 2003. Section 13A-10-100(a)(5), Ala. Code 1975, defines 'official proceeding' as '[a]ny proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath.' Rule 2.1, Ala. R. Crim. P., provides that '[a]ll criminal proceedings shall be commenced either by indictment or by complaint. (Emphasis added.) As noted, Joyner filed a complaint against Johnson in the Dothan Municipal Court charging harassment, on September 26, 2013, four days before Johnson returned to the school on September 30, 2003. This complaint commenced a criminal proceeding against Johnson for harassment. Thus, the State proved that there was an 'official proceeding' pending against Johnson, a criminal proceeding charging him with harassment, at which Joyner, the victim of harassment, would be a witness.
932 So.2d at 982 (emphasis added). Thus, according to Johnson, a criminal proceeding that is initiated by a complaint or indictment constitutes an "official proceeding."
The definition of "proceeding" as found in Black's Law Dictionary lends credence to this Court's position in Johnson, supra :
"1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing. 5. Bankruptcy. A particular dispute or matter arising within a pending case-as opposed to the case as a whole.
" ' "Proceeding" is a word much used to express the business done in courts. A proceeding in court is an act done by the authority or direction of the court, express or implied. It is more comprehensive than the word "action," but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment. As applied to actions, the term 'proceeding' may include-(1) the institution of the action; (2) the appearance of the defendant; (3) all ancillary or provisional steps, such as arrest, attachment of property, garnishment, injunction, writ of ne *659 exeat; (4) the pleadings; (5) the taking of testimony before trial; (6) all motions made in the action; (7) the trial; (8) the judgment; (9) the execution; (10) proceedings supplementary to execution, in code practice; (11) the taking of the appeal or writ of error; (12) the remittitur, or sending back of the record to the lower court from the appellate or reviewing court; (13) the enforcement of the judgment, or a new trial, as may be directed by the court of last resort.'
"Edwin E. Bryant, The Law of Pleading Under the Codes of Civil Procedure 3-4 (2d ed. 1899)."
Black's Law Dictionary 1398 (10th ed. 2014).
Moreover, the commentary to § 13A-10-103, Ala. Code 1975, states:
"Under the Criminal Code's formulation perjury in the first degree, § 13A-10-101 will expand the narrow limits of former § 13-5-110 to include all official proceedings (see § 13A-10-100(b)(5) for definition) and not just those 'on the trial of any person under an indictment for a felony....' Further, all previous false statements made in relation to the same matter, if affirmed under oath, will be treated the same as if made in the current official proceeding. (See 'swears falsely,' § 13A-10-100(b)(1) ). Section 13A-10-101 will replace former § 13-5-110 and will include oral and written statements, so long as false, material and made in an official proceeding, and such perjury will be a Class C felony. Section 13A-10-101 will also replace part of former § 13-5-111 to the extent that it covers any known false swearing, if material and done in an official proceeding, e.g., civil trials, administrative hearings, etc., such as Tyson v. State, [29 Ala. App. 220, 194 So. 699 (1940) ]."
In addition, the commentary to § 13A-10-100 states that "[m]ost of the definitions are derived from the Model Penal Code § 241.1, Michigan Revised Criminal Code § 4901 and New York Revised Penal Law § 210.00." The Model Penal Code § 241.1 states:
"A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true."
Pennsylvania adopts § 241.1 of the Model Penal Code verbatim, see § 4902, Title 18 Pa. C.S.A. Crimes and Offenses, and its Superior Court has repeatedly held that a statutory affidavit is sufficient to constitute an official proceeding as an element of perjury. The Pennsylvania Superior Court stated in Commonwealth v. Lafferty, 276 Pa.Super. 400, 419 A.2d 518, 522 (1980) :
"The elements of the crime of perjury are as follows: '(a) An oath to tell the truth must be taken by the accused, and (b) administered by legal authority, (c) in a judicial proceeding (or statutory affidavit ). (d) The accused must have testified in such proceeding, and (e) his testimony must be material to the judicial proceeding. (f) The testimony assigned as perjury must be false, and (g) must be given wilfully, and corruptly, and with knowledge of its falsity (or given recklessly), and for the purpose of having it believed....' "
(Quoting Commonwealth v. Yanni, 208 Pa.Super. 191, 222 A.2d 617 (1966) (emphasis added).) See also Commonwealth v. Russo, 177 Pa.Super. 470, 111 A.2d 359 (1955) ; Commonwealth v. Rossi, 170 Pa.Super. 292, 85 A.2d 598 (1952).
In addition, N.Y. Penal Law § 210.00(5) states:
*660 "A person 'swears falsely' when he intentionally makes a false statement which he does not believe to be true (a) while giving testimony, or (b) under oath in a subscribed written instrument. A false swearing in a subscribed written instrument shall not be deemed complete until the instrument is delivered by its subscriber, or by someone acting in his behalf, to another person with intent that it be uttered or published as true."
(Emphasis added.)
Accordingly, we hold that submitting a sworn affidavit to a law-enforcement official during a criminal investigation constitutes an "official proceeding" as that term is defined in §§ 13A-10-100, Ala. Code 1975.
The State introduced as evidence the sworn affidavit that Habel provided to Agent McCarter during the April 6, 2015, interview. Agent McCarter testified that he interviewed Habel as part of a criminal investigation and that he informed Habel at the beginning of the interview that it was a crime to lie to law-enforcement officials. Habel then provided a sworn affidavit detailing her allegations against Matthew and signed the affidavit in the presence of Agent McCarter and Agent Moore.
Habel's affidavit had a heading stating "Department of Homeland Security, U.S. Immigration and Customs Enforcement, State of Alabama, County of Madison" and began with the statement, "I, Sara Courtney Habel, being duly sworn, state the following." (C. 108.) The affidavit was four pages in length. Habel initialed the first page, and she signed each subsequent page under a statement that read: "The contents of this statement are true and correct to the best of my knowledge and belief. I have provided the above statement freely and voluntarily without any threats or coercion." (C. 109-11.) Agent McCarter signed each page; his signature on the second, third, and fourth pages appeared under a statement that read: "Subscribed and sworn to me on 6 in the month of April in the year of 2015." (C. 109-11.) Pages two, three, and four were signed by the witness, Agent Moore. Because Habel submitted a sworn affidavit to Agent McCarter during the criminal investigation of Matthew, her false statement was made during an official proceeding as that term is defined in §§ 13A-10-100, Ala. Code 1975. Therefore, the circuit court did not err when it denied Habel's motion to for a judgment of acquittal.
Conclusion
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
Burke, J., concurs. Kellum, J., concurs in the result. Windom, P.J., dissents , with opinion, which Welch, J., joins.

Habel was also indicted for second-degree perjury, see § 13A-10-102, Ala. Code 1975, intimidating a witness, see § 13A-10-123, Ala. Code 1975, and false reporting to law-enforcement authorities, see § 13A-10-9, Ala. Code 1975. Those charges were ultimately dismissed.

In that affidavit, Habel alleged that Matthew had touched the genitals of M.H. and S.H., that he had touched his genitals in front of M.H., and that he had made M.H. and S.H. watch pornography depicting children and adults.

Agent McCarter testified that Agent Moore worked with him at the Department of Homeland Security.

Guzzo testified that Linda Cordisco Steele, a senior trainer in forensic interviewing, conducted the second interview with M.H.

These claims appear as Issues II, III, IV, and V in the statement-of-issues section of Habel's brief.

This claim-which appears as Issue II in Habel's brief-is actually a challenge to the weight of the evidence. Even if this argument was not deemed waived under Rule 28(a)(10), Ala. R. App. P., it is not properly before this court. See Zumbado v. State, 615 So.2d 1223, 1241 (Ala. Crim. App. 1993) (quoting Johnson v. State, 555 So.2d 818, 820 (Ala. Crim. App. 1989) )(" 'We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.' ").

This claim appears as Issue III in Habel's brief.

This claim appears as Issue IV in Habel's brief.

This claim appears as Issue V in Habel's brief.

This claim appears as Issue I in Habel's brief.